NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-
GATE.—April, 1884.

GILLES v. STEWART.

*In the matter of the estate of* THOMAS GILLES, *deceased.*

Testator, by the third clause of his will, gave to his wife a legacy of
$3,000; by the fifth bequeathed "all the rest, residue and remainder"
of his estate, real and personal to his children; and, by the seventh,
authorized his executors, in their discretion "to continue my ice
business" for five years, using the net proceeds for the support and
education of "my family," and at the end of that period, or sooner
in their discretion, "to sell the same . . . dividing the pro-
ceeds thereof among my children equally."—*Held,*

1. That the power of sale and the disposition contained in the seventh
clause extended not only to the *good will* of the ice business, but also
to the instruments and implements employed in conducting it. ·

2. That, nevertheless, the seventh clause was subsidiary to the fifth,
and that, while the will contained no distinct preferential words,
the widow was entitled to her legacy, though it could not be satis-
fied without resort to the sale of such business ; and that the same
must be paid before the children could take anything under the
seventh clause.

UPON the judicial settlement of the account of Samuel
Stewart and another, as executors of decedent's will,
a question arose in respect to the rights of Ellen Gilles,
widow and legatee, as to the payment of her legacy.
The facts appear sufficiently in the opinion.

JOHN HARDY, *for executors.*

ALBERT MATTHEWS, *for widow.*

JOHN BRUNNEMER, *special guardian.*

THE SURROGATE.—By his will, dated February 3rd,
1879, this testator, after ordering the payment of his

debts, gives his wife the right of occupying, with the other surviving members of his family, his residence in Thirtieth street, in the city of New York, free of rent. By the third clause of the will, he bequeaths to his wife certain household goods, and three thousand dollars in money. "These provisions for my wife," he says, "being intended by me and to be accepted by her in lieu and bar of her dower and right of dower in my estate." By the fourth clause, his wife and children are given a certain burial lot. The fifth clause bequeaths "all the rest, residue and remainder" of his estate, real and personal, to his children. A subsequent clause, the seventh, is in these words: "After my decease, in case my executors regard it as wise and expedient to continue my ice business, it is my desire that they shall conduct the same under the management of my son, David George, for a period of five years, the proceeds thereof, after all expenses deducted, to be used in the support, education and maintenance of *my family;* but at the end of said period, or sooner if it appears to my executors not to yield an adequate profit, they are directed to sell the same for the best price they can obtain therefor, *dividing the proceeds thereof among my children equally.*"

At the time of his death, the testator was engaged in the business of buying and selling ice and delivering the same to customers along a certain established route. After his death, his executors, in the exercise of their discretion, continued that business, and in the year 1880 rendered their account. It appears by their second account, now submitted, that the expenses of the business have exceeded its receipts by $2.71; that its assets

are $20.83 less than its liabilities; that the furniture, horses, wagons, harnesses, etc., used in conducting it have been sold for $3,000; and that the $3,000 legacy to the widow has not been satisfied. It further appears that, unless resort be had to the proceeds of this sale for satisfying such legacy, it must fail utterly for lack of assets applicable to its payment.

The question whether the moneys derived from the sale of the plant of the "ice business" should be, either in whole or in part, applied to the discharge of the $3,000 legacy to Mrs. Gilles divides itself into two parts, viz:

1. What is meant by the term "ice business," as that term is used in the seventh clause of the will?

2. Was it the testator's intention that his wife should receive her legacy, even though its payment might necessitate a resort to the proceeds of the sale of the ice business, or did he, on the other hand, by the seventh clause of his will, mean to give his children a specific legacy of such proceeds, to which they should be entitled, even though the funds of the estate might be inadequate to pay the legacy to the widow?

*First.* It can certainly be claimed, with some show of reason, that the expression "ice business," as used by the testator, should be taken in the restricted sense which contestant's counsel claims to be its true interpretation: In directing the sale of the "business" no specific mention is made of horses, wagons, harness, ice, etc.

It is insisted, therefore, that, though the testator doubtless intended that the plant of which he had himself made use, and such other as from time to time the

executors might supply, should be employed by them after his death in the conduct of the business, he nevertheless designed that, when the business should be wound up, only that portion of its proceeds derived from the sale of its good will should pass under the seventh clause of his will. This contention, however, cannot in my judgment be sustained. It certainly could not have been the testator's intention that, after the good will of the business should have been sold by the executors, they should continue to hold the horses, wagons, ice, etc., which such sale would have rendered useless. · He doubtless meant that not only the good will, but all the means, instruments and implements for conducting the business, should be disposed of whenever, in the judgment of his executors, it should seem wise to discontinue it.

I think, nevertheless, that the widow is entitled to her legacy, even though it cannot be satisfied without resort to the proceeds of the sale of the ice business. Her legacy is given by the third clause of the will, as has been stated already. Next comes the clause relating to the burial plot, and next the gift of the *entire residue* to the children. At this stage, the testator finished the purely dispositive provisions of his will. By the provisions which follow, he did not intend, I think, to vary aught that he had said before. He simply designed to countenance methods of administration which might, as he thought, be for the best interests of all his beneficiaries, but to which, without his express sanction, his executors could not lawfully resort.

Taking the will as a whole, clause seven seems to me practically subsidiary to clause five.

'It was only in the event that the ice business should form a part of the clear residue that the testator designed the proceeds of its sale to be divided among his children.   It is true that, in the clause which gives the legacy to his wife, there are no distinct preferential words, though those which declare the legacy to be in lieu of dower suggest a preference.   But when we consider the significant arrangement of the clauses of the will, together with the fact that the executors were at liberty in their discretion to employ any such assets of the estate as they might think best in their management of the ice business, and that they were required to devote the profits thereof to the maintenance of the widow as well as of the other members of the family, I think it is clear that her legacy must be paid before the children can take anything under the seventh clause.